## Case No. 17,094.

### In re WALLACE.

[Deady, 433; 2 N. B. R. 134 (Quarto, 52); 3 Am. Law Rev. 174; 1 Chi. Leg. News, 30.] [1]

District Court, D. Oregon.    July 25, 1868.

BANKRUPTCY—EFFECT OF ADJUDICATION—NOTICE —JURISDICTION OF DISTRICT COURTS— SUMMARY PROCEEDINGS.

1. An adjudication declaring a person a bankrupt, is in the nature of a judgment in rem, and therefore notice to and binding upon all the world.

[Cited in brief in Brown v. Wygant, 6 Mackey, 448.]

2. Under the bankrupt act of 1867 [14 Stat. 517] § 1, the several district courts have equity jurisdiction and power over all "acts, matters and things to be done under and by virtue of the bankruptcy," and are authorized by summary proceedings to administer all the relief which a court of equity could administer under the like circumstances upon regular proceedings.

[Cited in Re Mallory, Case No. 8,991; Re Brinkman, Id. 1,884.]

3. Notice of an application for an injunction in bankruptcy need not be given, unless specially directed: and the provision in the act of March 2, 1793 (1 Stat. 334), prohibiting writs of injunction from being granted, except upon notice to the adverse party, applies only to suits in equity in the supreme and circuit courts.

[Cited in Re Muller, Case No. 9,912; Re Ulrich, Id. 14,327.]

4. In exercising the equity power which pertains to a district court, as a court of bankruptcy, it is not deemed necessary or proper that resort should be had to the plenary proceedings common to suits in equity; but a petition stating the facts and praying the particular relief sought, is sufficient.

[Cited in Re Dole, Case No. 3,965; Re Oregon Iron Works, Id. 10,562.]

This was a petition by certain of the creditors of a voluntary bankrupt [John B. Wallace] for an injunction to restrain other creditors from selling the property of the bankrupt on execution.

W. W. Page, for petitioners.

Erasmus D. Shattuck, for respondents.

DEADY, District Judge. This petition was filed on June 13, 1868. It sets forth that the petitioners, the Bank of British Columbia and others, are creditors of the bankrupt, and that on May 30, 1868, Wallace filed his petition in bankruptcy in this court, and that on June 8, he was, by the register, duly adjudged to be a bankrupt; that about May 20, 1868, the respondents, C. M. Lockwood and others,

commenced actions against the bankrupt, in the state courts for the county of Multnomah, to recover certain debts alleged to be due them, and caused the property of the bankrupt to be attached to satisfy any judgment they might obtain therein, and that between June 1 and 8, these respondents obtained judgments in the actions aforesaid, by default; that afterwards said respondents sued out executions upon said judgments and placed them in the hands of the respondents, Stitzel and Hudson, sheriff and constable respectively of said county; and that said sheriff and constable are about to sell the property of the bankrupt upon such execution. Two days after the filing of the petition for injunction, an order was made allowing an injunction until the further order of the court.

The respondent Lockwood now comes and demurs to the petition, and for cause of demurrer alleges (1) that the facts stated are not sufficient to entitle the petitioners to the relief prayed for; and (2) that this court has not jurisdiction of the matters involved in this suit as set forth in the petition.

In support of the first ground of demurrer, counsel for Lockwood insists that the petition should show that the respondents had notice of the adjudication in bankruptcy. The adjudication in this court, by which Wallace was declared a bankrupt, determined his legal status in that respect, and so far is binding upon all the world. These respondents had therefore constructive notice of the decree in bankruptcy, and that is a sufficient answer to this objection. The decree is in the nature of a proceeding in rem before a court having jurisdiction of the subject matter, and is notice and evidence to third persons, not actually parties thereto, that Wallace had committed an act of bankruptcy for which he had been duly decreed a bankrupt. Morse v. Godfrey [Case No. 9,856]; Shawhan v. Wherritt, 7 How. [48 U. S.] 643.

The second ground of demurrer raises the question: Has the district court equity power in proceedings in bankruptcy? Section 1 of the act of 1867 [14 Stat. 517] constitutes "the several district courts of the United States," courts of bankruptcy, with "jurisdiction in their respective districts in all matters and proceedings in bankruptcy." This court being thus declared a court of bankruptcy, with jurisdiction over all matters and proceedings in bankruptcy, it would seem to follow, as a matter of course, that such equity power inherently belongs to it, as may be found necessary and proper to maintain and exercise the jurisdiction thus granted. And the act, as if anticipating the question: What is a matter or proceeding in bankruptcy? goes farther, and in the same section declares, that "the jurisdiction hereby conferred shall extend to all cases and controversies arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy: to the collection of all the assets of the bankrupt; to the ascertain-

---

1 [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission. 2 N. B. R. 134 (Quarto, 52), and 3 Am. Law Rev. 174, contain condensed reports. 1 Chi. Leg. News, 30, contains only a partial report.]

ment of the liens and other specific claims thereon; to the adjustment of the various priorities and the conflicting interests of all parties; and to the marshalling and disposition of the different funds and assets, so as to secure the rights of all parties and due distribution of the assets among all the creditors; and to all acts, matters and things to be done under and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy." And also, that "said courts shall have full authority to compel obedience to all orders and decrees passed by them in bankruptcy, by process of contempt and other remedial process, to the same extent that the circuit courts now have in any suit pending therein, in equity."

The judgments now sought to be enforced by the respondents against the property of the bankrupt, were all given after the filing of the petition in bankruptcy. The decree pronouncing Wallace a bankrupt, took effect by relation, from the date of such filing, and divested him of all property not excepted from the operation of the act and saved to him by section 14. The attachments of the respondents, being levied within four months of the commencement of proceedings in bankruptcy, will be dissolved by the assignment to the assignees, and for the purpose of this petition, must now be considered as of no effect. This being the state of the case, it is apparent that the respondents by their executions, are endeavoring to subject the estate of the bankrupt—now and since May 30 under the exclusive jurisdiction of this court for distribution among all the creditors—to the exclusive payment of their particular demands.

This property no longer belongs to the bankrupt, and is not liable to be taken on executions against his property. The policy and aim of the bankrupt law is to compel an equal distribution of the estate of the bankrupt among all his creditors. Shawhan v. Wherritt, 7 How. [48 U. S.] 644. Can this court prevent this interference with the estate of the bankrupt, on the part of these respondents, by injunction? After a careful examination of the act of 1867, and the decisions given under that of 1841 [5 Stat. 440], I think it can. Indeed, I have no doubt of it. The proceedings in bankruptcy are in the nature of equity proceedings. The property seized by the respondents is the assets of the bankrupt, and the jurisdiction of this court is specially extended to the collection and distribution of such assets. This power, with others granted by the first section of the act, is in its nature an equity power, and may be exercised by proceedings in the nature of equity proceedings. In addition the act constitutes this court a "court of bankruptcy," with power to do any act necessary and proper for the due administration and settlement of the bank-

rupt's estate. Proceedings by petition for the exercise of equity power were common in the district courts under the act of 1841. In re Foster [Case No. 4,960]; In re Eames [Id. 4,237]; Parker v. Muggridge [Id. 10,743]; Mitchell v. Great Works Milling & Manuf'g Co. [Id. 9,662]; In re Babcock [Id. 696]; In re Bellows [Id. 1278]. This power was expressly affirmed by the supreme court in Ex parte Christy, 7 How. [48 U. S.] 312.

In Re Foster, supra, Mr. Justice Story says: "And here I lay it down as a general principle, that the district court is possessed of the full jurisdiction of a court of equity, over the whole subject matters which may arise in bankruptcy, and is authorized by summary proceedings to administer all the relief which a court of equity could administer under the like circumstances, upon a regular bill and proceedings instituted by competent parties. In this respect, the act of congress, for wise purposes, has conferred a more wide and liberal jurisdiction upon the courts of the United States, than the lord chancellor sitting in bankruptcy, was authorized to exercise. In short, whatever he might properly do, sitting in bankruptcy, or sitting in the court of chancery, under his general equity jurisdiction, the courts of the United States are by the act of 1841, competent to do." It is the duty of this court, by means of the jurisdiction given to it, to preserve and distribute the estate of the bankrupt among his creditors, as the act prescribes. The respondents, by means of these executions, are attempting to prevent this distribution of the estate. An injunction is a proper remedy or means to prevent this wrong and fraud upon the law from being accomplished. A petition to the court is a proper means of invoking this power. The demurrer to the petition is overruled at the cost of the respondent.

As a matter for future practice, it is proper to add, that in exercising the equity power which pertains to this court as a court of bankruptcy, it is not deemed necessary or proper, that resort should be had to the formal and plenary proceedings common to suits in equity in the circuit court. A petition stating the facts and praying for the order, relief or proceeding sought for, is deemed sufficient. For the same reason a motion by Lockwood to dissolve this injunction, would have been sufficient without resorting to the formality of a demurrer. Nor need notice be given of an application for an injunction, unless specially directed. The restriction in the act of 1793 (1 Stat. 334) against issuing injunctions without notice, applies only to suits in equity in the circuit and supreme courts. It does not affect the allowance of injunctions under the equity power conferred upon the district courts by the bankrupt act, in relation to matters pending therein, and within its exclusive cognizance.